**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LINDA HURLEY and REV. REX STEWART,
Duly Registered Voters in the State of New York;
ROBERT JACKSON, RICHARD GOTTFRIED,
RYUH-LINE NIOU, ANITA THAYER and
JONATHAN WESTIN, Individually and as Co-
Chairs of the New York State Committee of the
Working Families Party and Members of the
Executive Board of the New York State
Committee of the Working Families Party; THE
NEW YORK STATE COMMITTEE OF THE
WORKING FAMILIES PARTY; THE
EXECUTIVE BOARD OF THE NEW YORK
STATE COMMITTEE OF THE WORKING
FAMILIES PARTY; and THE WORKING
FAMILIES PARTY OF NEW YORK STATE,

Case No. 1:20-cv-

**COMPLAINT**

                                        Plaintiffs,

                    v.

PETER S. KOSINSKI, as the Co-Chair of the New
York State Board of Elections; DOUGLAS A.
KELLNER, as the Co-Chair of the New York
State Board of Elections; ANDREW J. SPANO, as
a Commissioner of the New York State Board of
Elections; TODD D. VALENTINE, as Co-
Executive Director of the New York State Board
of Elections; and ROBERT A. BREHM, as Co-
Executive Director of the New York State Board
of Elections,

                                        Defendants.

## INTRODUCTION

1.      On April 3, 2020, Governor Cuomo signed into law an important bill establishing

a comprehensive system of public campaign financing for the first time in New York State

history. The effort to establish such a system took more than a decade, but the law ultimately

codifying the system was passed hastily and without debate as part of a Fiscal YEAR 2021

budget bill. The haste is clearest in the bill's unnecessary and unconstitutional changes to the statute governing the qualification of the state's political parties, which bear no relationship to public campaign finance.

2.     While the pre-existing statute defined a party as a political organization that received at least 50,000 votes for governor on its ballot line in the quadrennial gubernatorial election, the new law requires all political parties to requalify every two years, and to obtain a percentage of the total vote that few, if any, of the existing minor parties in New York State have any hope of attaining. Crucially, a party must now nominate a candidate for President of the United States, beginning with the 2020 election, and to secure for that candidate more than three times the number of votes previously required to achieve or maintain party status. The new vote threshold requirements are, practically speaking, even more onerous in the non-presidential year gubernatorial elections. These new requirements are unconstitutional on their face and as applied to the Plaintiffs herein.

3.     This case is about the ability of citizens to engage in one of the most basic of associational rights – banding together to advance their views in politics. Without the Court's immediate intervention, many – if not most – New York parties, their members and their supporters will cease to have a voice and presence in state politics. These new requirements for party status will  destroy nearly all of the state's minor parties, and effectively preclude the formation of new parties.

**THE PARTIES**

4.      Plaintiff Linda Hurley is a registered voter and elector of the State of New York who resides in Niagara County. Plaintiff Hurley has exercised her right to support, advocate for and vote for minor party candidates, and plans to do so again.

5.    Plaintiff Rev. Rex Stewart is a registered voter and elector of the State of New York who resides in Niagara County. Plaintiff Stewart has exercised his right to support, advocate for and vote for minor party candidates, and plans to do so again.

6.    Plaintiff Robert Jackson is a registered voter and elector of the State of New York who resides in New York County. He is a candidate of the Working Families Party for the public office of Member of the New York State Senate from the 7th Senate District in New York County, and an incumbent in that office.

7.    Plaintiff Richard N. Gottfried is a registered voter and elector of the State of New York who resides in New York County. He is a candidate of the Working Families Party for the public office of Member of the New York State Assembly from the 75th Assembly District in New York.

8.    Plaintiff Yuh-Line Niou is a registered voter and elector of the State of New York who resides in New York County. She is a candidate of the Working Families Party for the public office of Member of the New York State Assembly from the 65th Assembly District in New York County, and an incumbent in that office.

9.    Plaintiff Anita Thayer is a registered voter and elector of the State of New York. Plaintiff Thayer is a Member, Co-Chair, and a Member of the Executive Board of the New York State Committee of the Working Families Party. In these capacities she has participated in the process of issuing Working Families Party candidate nominations, designations, and authorizations, has overseen and supervised the Working Families Parties fundraising and expenditures, and has been involved in various Working Families Party campaigns supporting its candidates for office.

10.     Plaintiff Jonathan Westin is a registered voter and elector of the State of New York. Plaintiff Westin is a Member, Co-Chair, and a Member of the Executive Board of the New York State Committee of the Working Families Party. In these capacities he has participated in the process of issuing Working Families Party candidate nominations, designations, and authorizations, has overseen and supervised the Working Families Parties fundraising and expenditures, and has been involved in various Working Families Party campaigns supporting its candidates for office.

11.     Plaintiff the New York State Committee of the Working Families Party (the "State Committee") is the body duly empowered by the election law and Rules of the Working Families Party of New York State to nominate, designate, and authorize certain candidacies for office on the Working Families Party ballot line, and to oversee fundraising and expenditures conducted in the name of the Working Families Party.

12.     Plaintiff Executive Board of the New York State Committee of the Working Families Party (the "Executive Board") is the body duly vested by the Rules of the Working Families Party of New York State with certain powers and responsibilities of the State Committee when that committee is not in session, including but not limited to issuing candidate nominations and authorizations and overseeing Party fundraising and expenditures.

13.     Plaintiff Working Families Party of New York State is a political party under New York law in that its gubernatorial candidate garnered more than 50,000 votes on its ballot line in the last gubernatorial election. As a result, it is entitled to be on the ballot in New York for a four-year period beginning with the 2018 gubernatorial election and to enjoy the benefits available to a qualified party. Plaintiffs State Committee, Executive Board and Working Families

Party of New York State are herein collectively described as the "Working Families Party" or "WFP."

14.    Defendant Peter S. Kosinski is a Commissioner and Co-Chair of the New York State Board of Elections. He is sued in his official capacity. The New York State Board of Elections is an agency within the Executive Department of the State and is responsible for administering and enforcing all laws relating to elections in New York State.

15.    Defendant Douglas A. Kellner is a Commissioner and Co-Chair of the New York State Board of Elections. He is sued in his official capacity.

16.    Defendant Andrew J. Spano is a Commissioner of the New York State Board of Elections. He is sued in his official capacity.

17.    The position of the fourth Commissioner of the New York State Board of Elections is currently vacant. Plaintiffs anticipate amending to name the fourth Commissioner if one is appointed, and anticipate suing that person in his or her official capacity as a Commissioner of the New York State Board of Elections.

## JURISDICTION AND VENUE

18.    This case arises under the Constitution and the laws of the United States. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343. This Court is empowered to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

19.    This Court has personal jurisdiction over each Defendant. Each of the Defendants is sued in his or her official capacity as an officer or agent of the government of the State of New York. Furthermore, on information and belief, each of the Defendants resides in the State of New York.

20.     Venue properly lies in this Court under 28 U.S.C. § 1391(b)(2). The New York State Campaign Finance Review Commission held four public hearings and meetings within this district. Dozens of Working Families Party candidates ran for office within this district in the November 2019 election, and dozens more are running for office now. If the Working Families Party loses its party status, it will feel the impact of that loss in this district in future elections.

21.     Therefore, a substantial part of the events giving rise to the claims occurred in this District.

## STATEMENT OF FACTS

22.     Plaintiff Working Families Party is a political party under N.Y. ELEC. LAW § 1-104.3. The goal of the Working Families Party is to inject issues of highest importance to low- and moderate-income people -- such as jobs, wages, health care, education, and housing -- into the public debate, and to elect candidates who support policies that improve the lives of working families in New York State. The Working Families Party was launched in June of 1998, and first obtained official ballot status as a recognized political party by obtaining just over 50,000 votes for its gubernatorial candidate that year. The Working Families Party has members in all 62 counties in New York State.

23.     Under New York election law as it existed from 1935 until April of 2020, a political organization could become a "party" by getting 50,000 or more votes for its candidate in the New York Gubernatorial election. *See* N.Y. Elec. Law § 1-104(3) (McKinney 2019). It would retain that "party" status for four years, until the next Gubernatorial election, at which time it would again need to tally at least 50,000 votes for its candidate in order to re-qualify for another four years.

24.     As is well known, New York is one of a handful of states that still permits "fusion" voting. In a fusion system, a candidate may run as the nominee of more than one political party. Fusion candidacies are common in New York, and are always voluntary. The party must nominate the candidate, and the candidate must accept the party's nomination. Some minor parties do not use fusion, preferring to run "stand-alone" candidates. Regardless of whether a minor party "fuses" with a major party candidate or runs a stand-alone candidate, that party must obtain 50,000 votes for its candidate on its own ballot line to earn another four years of continued ballot status.

25.     The benefits of recognized party status under New York law are extensive, and indeed critical to a party's success. Recognized parties enjoy significant advantages over non-recognized independent political bodies, in public visibility, fundraising and in the ability to win elections. See generally N.Y. Elec. Law § 14-114 (McKinney 2019). Further, as the Second Circuit has explained, only a recognized party "can automatically place a candidate on the ballot for statewide election without first undertaking the burden of a special petition drive in order to do so." *Green Party of N.Y. State v. N.Y. State Bd. of Elections*, 389 F.3d 411, 415 (2d Cir. 2004) (citing N.Y. Elec. Law §§ 6-104, 6-138(1)).

## FUSION VOTING

26.     Fusion voting is a system in which a candidate may appear simultaneously on the ballot lines of more than one political party. Fusion voting is voluntary and occurs when a candidate seeks to appear on the ballot lines of more than one party, and when those parties place that candidate on their ballot lines. Fusion voting includes the right of candidates to seek and run on the ballot lines of more than one party, the right of voters to choose among separate party ballot lines as they cast votes for their chosen candidates, the right to have their votes counted on

that line, the right to campaign and advocate for others to vote on that line, the right to seek, grant or withhold endorsements, designations and nominations of such fusion parties and the right to influence candidates and public officials on behalf of such fusion parties. Fusion voting includes that the tally of votes from separate ballot lines are aggregated on behalf of a single candidate. Votes are counted and made public for each ballot line. A candidate's final vote total is the sum of votes cast on each line on which he or she appears. Plaintiffs have all participated in and rely on the New York's fusion voting system.

27.     Fusion voting has been a regular feature of elections in New York for more than 150 years, and applies to local, judicial, legislative and statewide elections, including elections for president and other federal offices. The right to fusion voting is enjoyed by voters, political parties, candidates and all who participate in elections, including the Plaintiffs. These rights, singularly and collectively, are fundamental to the full and robust exercise of the franchise in New York. Fusion voting is protected and guaranteed by the New York  State Constitution.

## THE CREATION OF THE COMMISSION

28.     The first iteration of the law challenged here was written by The New York State Campaign Finance Review Commission ("the Commission"), which itself was created as part of a budget and appropriations bill submitted by Governor Cuomo and approved by the Legislature in 2019. It has been widely reported in the press that part of the impetus for the Governor's creation of the Commission was the Working Families Party's actions in 2018, and that a goal of the Commission was effectively to eliminate the Working Families Party and other minor parties. *See, e.g.*, Carl Campanile, Cuomo Panel Moves Closer to Keeping Working Families Off the Ballot in NY, N.Y. POST (Nov. 25, 2019, 2:52 PM), https://nypost.com/ 2019/11/25/cuomo-moves-closer-to-keeping-working-families-off-the-ballot-in-ny/; Bill Mahoney, Cuomo Quietly

Presses to Weaken His Working Families Party Nemesis, POLITICO (Oct. 25, 2019, 5:00 AM),

https://www.politico.com/states/new-york/albany/ story/2019/10/25/cuomo-quietly-presses-to-

weaken-his-working-families-party-nemesis-1225974; Fred Mogul, Cuomo Ally Seeks to Block

Third Parties from the Ballot, GOTHAMIST (Oct. 30, 2019, 10:02 AM),

www.gothamist.com/news/cuomo-ally-seeks-block-thirdparties-ballot. Jay Jacobs, Chairman of

the New York State Democratic Committee, was named to the commission by Governor Cuomo.

The Commission's Report shows that Mr. Jacobs became the de facto leader of the Commission

and its most vocal participant. Upon information and belief, Governor Cuomo was well aware of

these beliefs when he appointed Mr. Jacobs to the Commission.

29.     Established as part of the FY 2020 Enacted Budget (the "FY 2020 Budget"),

through newly enacted Part XXX of the Laws of 2019, Chapter 59, the Commission was created

to "make recommendations for new laws" establishing a system of voluntary public financing for

statewide and state legislative public offices, and to "determine and identify all details and

components reasonably related to administration of a public financing program," including the

catch-all category of "rules and definitions governing . . . political party qualifications."

30.     The FY 2020 Budget purported to give the Commission the "binding power to

implement public campaign financing for legislative and statewide offices," and to "determine

specific aspects of the public financing system, including eligibility thresholds, public financing

limits and contribution limits for participating candidates." See Governor Cuomo & Legislative

Leaders Announce Members of the Public Campaign Financing Commission,

GOVERNOR.NY.GOV (Jul. 3, 2019) news/governor-cuomo-legislative-leaders-announce-

members-public-campaign-financing-commission (last visited April 16, 2020).

## THE COMMISSION'S DECEMBER 1, 2019
## <u>REPORT AND RECOMMENDATIONS</u>

31.     The Commission was established with a requirement that it render its

recommendations by December 1, 2019, with the provision that its recommendations—and *only*

*its recommendations*--would become binding law on December 23, 2019 unless modified by the

Legislature. *See id.* §1(a).

32.     From the outset, it was expected that the Legislature would not interfere with the

Commission's recommendations. Indeed, the Legislature was not expected to come back into

session between the date the recommendations were published and the date they would become

binding law. This expectation turned out to be correct. Neither chamber of the Legislature

returned to Albany in December 2019.*See* New York State Legislative Session Calendar,

NYASSEMBLY.GOV https://nyassembly.gov/leg/docs/sessioncalendar_2019.pdf (last visited

April 16, 2020). The Commission's December 1, 2019, Report repeatedly describes the

Commission's *recommendations* as "hav[ing] the force of law."

33.     The effect of the foregoing was therefore to give to the Commission the

Legislature's power and obligation to consider and pass laws and to obviate the Governor's

obligation to consider and sign or veto those laws.

34.     In Part IV of its recommendations, the Commission increased the thresholds to

become and remain a party. In the Commission's recommendations, a political body making an

inaugural attempt to become a qualified party, or a qualified party seeking to maintain its status,

would need to obtain "at least 2% of the total votes cast for governor, or 130,000 votes,

whichever is greater, in a gubernatorial election year and at least 2% of the total votes cast for

president, or 130,000 votes, whichever is greater, in a presidential election year." *Id*. The

Commission stressed that "these two thresholds work independently of one another," and that

"this provision takes effect on January 1, 2020, so that all existing parties must requalify at the November 2020 elections." *Id*. at 5. The Commission also raised the signature requirements for candidates seeking to be on the ballot independent of a Party's nomination. *Id*.

35.     In Part V of its recommendations  the Commission provided a different effective date before the proposed system of public campaign financing, stating  that the new contribution limits and public-finance system would not take effect until November 9, 2022. *See id.* Delaying the contribution limit and public funding rules until the start of the 2024 election cycle while requiring political parties to re-qualify in the 2020 Presidential election would allow incumbents to  run for re-election in 2022 under the old contribution limits (not the new, lower limits), with no risk of an insurgent opponent receiving public funding.

36.     The Commission's "Recommendations" -- meaning, the section of the Commission Report that became law -- established a new public finance system and new party qualification rules, and did not in any way make its two components non-severable. The presumption, as with all legislation, is the reverse: they are severable.

37.     Notably, the Commission's 139-page report offered not one word of justification for including the Presidential election in the party-qualification thresholds. The report does not argue that it will increase the cost of the public financing program, because it is the Federal Election Commission and not any state agency that enforces campaign finance rules in a presidential election. The report does not assert that the Gubernatorial requirement, in place since 1854, has been studied and deemed inadequate. The report does not explain why a party's participation in the Presidential election should determine whether it may nominate a candidate for Governor or other New York State public offices. Ultimately, the Commission's recommendations placed a substantial new burden on the associational rights of voters who

11

support "third" parties without hinting at, let alone specifying, any state interest justifying this new burden.

38.     The Commission's report  asserted the Commission's finding "that increasing party threshold will actually increase voter participation and voter choice since voters will now be less confused by complicated ballots with multiple lines for parties that may not have any unique ideological stances." The report describes no evidence of voter confusion presented to the commission, and no other evidence to support the absurd, Orwellian notion that having fewer parties on the ballot would somehow increase voter choice. In fact, approximately 10% of New York's voters cast their ballots on minor party lines. Eliminating those parties will clearly decrease voter choice.

39.     The Commission's Report became law on January 1  2020, after the legislature failed even to meet to debate the Commission's recommendations.

40.     Many of the plaintiffs here brought suit to invalidate the law.

41.     On March 12, 2020, the New York State Supreme Court, Niagara County, issued a Decision & Order granting summary judgment to plaintiffs in *Hurley, et al. v. The Public Campaign Financing and Election Commission, et al.*, No. E169547/2019.

42.      The State Supreme Court held that the Legislature had improperly delegated its law-making powers to the Commission in violation of the New York State Constitution, by empowering the Commission to make recommendations that would automatically become binding and final law without further action by the Legislature. The State Supreme Court specifically "note[d] that the fact that the Legislature reserved the right to modify or abrogate by statute the recommendations of the Commission does not validate the process." *Id*. at 7.

43.     As a result of the State Supreme Court's Decision & Order, the Commission's recommendations were struck down in their entirety, but the Commission's recommended changes to party thresholds and ballot access requirements were reenacted *three weeks later* as part ZZZ of the New York State FY 2021 Budget Bill S7508-B/A9608-B.(the "April 3 law")

44.     In late March 2020, in the midst of his daily briefings on the covid-19 pandemic, Governor Cuomo proposed a new version of a New York State Fiscal Year 2021Budget Bill that included the same public campaign finance provisions, but glaringly did not contain the one purported justification for the heightened party threshold and ballot access requirements. See Denis Slattery, Cuomo Floats Public Financing in N.Y. State Budget Despite Judge Scuttling Controversial Commission, N.Y. DAILY NEWS (Mar. 27, 2020), https://www.nydailynews.com/news/politics/ny-cuomo-public-financing-budget-afterjudge-blocked-20200327-46cqzvxdufdchmangut6kzcuzq-story.html.

45.     Specifically, Part ZZZ, Section 10 of the FY 2021 Budget Bill amends Subdivision 3 of section 1-104 of the election laws to require that a political organization receive at least 2% of total votes cast for President, or 130,000 votes, whichever is greater, in order to qualify as a party in the following Gubernatorial election. Similarly, a political organization must receive 2% of the total votes cast for governor, or 130,000 votes, in order to qualify as a party for the following Presidential election. Part ZZZ, Section 12 of the FY 2021 Budget Bill provides that these provisions take effect immediately, while the public finance provisions in Sections 2, 3, and 4 shall not take effect until November 9, 2022—after the 2022 Gubernatorial election— and shall apply to participants in the primary and general elections to be held in 2024.

46.     Unlike the Commission's now-invalid recommendations, the FY 2021 Budget now includes *both* a novel "non-severability" provision, in Part ZZZ, and, two paragraphs later, a

severability provision, including a declaration that it was "the intent of the legislature that this act would have been enacted even if provisions subsequently struck down by a court had not been included herein."

47.     On information and belief, the non-severability provision of the FY 2021 Budget Bill was the subject of no debate or discussion in the legislature. Neither is there any statement in the bill that the party qualification requirements are in any way linked to the public campaign finance provisions.

48.     The new threshold of 2% or 130k is even more stringent in the gubernatorial years, because turnout is lower. A brief look at the data is instructive. In 2018, under the long established 50,000 vote threshold, 8 qualified minor parties ran candidates and tried to maintain their ballot status. Six succeeded, and two fell below the 50,000 vote requirement. Had the new rules been in effect, only one minor party would have maintained its ballot status, as the other seven received fewer than 130,000 votes, the greater of the two new thresholds that would have applied. Had the new requirements been in place, there would now be only three qualified parties in New York rather than seven.

49.     The new threshold would have an equally devastating effect on efforts by citizens to launch new parties and inject new ideas into the political dialogue. It takes time to build support among the voting public. Had the new rules been in effect in any of the initial qualifying elections of the eight parties on the ballot in 2018, only the Conservative Party would have achieved recognized ballot status. While the other seven crossed the 50,000 vote bar that was the law at their births, none came even close to either the 2% or 130,000 standard. It is clear that the new rules are designed not only to eliminate existing minor parties, but also to make it exceedingly difficult for new parties to rise up in their place.

50.     In 1935, the last time the threshold was raised (from 15,000 to 50,000 votes), the New York State population was 13.4 million. By 2018 it had increased roughly 50 percent to 20.3 million. Had party qualification thresholds risen accordingly, they would have increased to 75,000, not to 130,000.

51.     On April 2, 2020, the New Y0ork state Senate and Assembly passed FY 2021 Budget Bill.   It was signed by Governor Cuomo on April 3. See S07508B Summary, N.Y. St. Assembly, https://nyassembly.gov/leg/?default_fld=&leg_video=&bn=S07508&term=2019&Summary=Y &Actions=Y&Floor%26nbspVotes=Y (last visited May 20, 2020). The FY 2021 Budget is incorporated by reference herein. *See* N.Y. Senate-Assembly Bill S7508B, A9508B, https://legislation.nysenate.gov/pdf/bills/2020/S7508-B (last visited April 16, 2020).

52.     The Plaintiffs strongly support the public campaign finance system created by passage of this law. They do not wish to invalidate any aspect of the public financing provisions of the law.

53.     As described below, the Plaintiffs seek only to enjoin enforcement of the requirement that the Working Families Party obtain the greater of 130,000 votes or 2% of the total votes cast in presidential and gubernatorial  elections, and to enjoin the Defendants from stripping the Working Families Party of its recognized party status should it fail to meet that requirement.

**<u>FIRST CLAIM FOR RELIEF</u>**

**Violation of the First and Fourteenth Amendments and 28 U.S.C. § 1983 –
Freedom of Association**

54.     Plaintiffs repeat and reallege as though fully set forth herein the allegations of Paragraphs 1 through 58 of the Complaint.

55.     The Supreme Court recognizes "the constitutional right of citizens to create and develop new political parties." *Norman v. Reed*, 502 U.S. 279, 288 (1992). "The right derives from the First and Fourteenth Amendments and advances the constitutional interest of like-minded voters to gather in pursuit of common political ends, thus enlarging the opportunities of all voters to express their own political preferences." *Id.* "This First Amendment freedom to gather in association for the purpose of advancing shared beliefs is protected by the Fourteenth Amendment from infringement by any State." *Democratic Party of U.S. v. Wisconsin ex rel. La Follette*, 450 U.S. 107, 121 (1981). And because "ballot access restrictions" can "'limit the field of candidates from which voters might choose,'" *Anderson v. Celebrezze*, 460 U.S. 780, 786 (1983), courts subject to strict scrutiny those ballot access restrictions that impose a severe or heavy burden on a party or its members.

56.     Requiring ANY Political Party to nominate a candidate for President and to obtain 2% or 130,000 votes or else lose "party" status imposes a severe burden on that Party and its members and voters. "A burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment." *Anderson*, 460 U.S. at 793. Even for a party that wants to run a candidate for President, the short timeframe of the new law would disproportionately harm such a party, affording insufficient time to build the momentum and recognition needed to garner 2% of the vote (or 130,000 votes) for President in November of this year.

57.     In imposing these requirements, the new ballot access laws violate the First and Fourteenth Amendments as applied to the Working Families Party, its candidates, and its supporters, including other Plaintiffs.

58.     The ballot access provisions are invalid in all their applications and therefore that portion of the statute is facially invalid. By reason of the foregoing, Defendants, acting under color of state law, have deprived and will continue to deprive Plaintiffs and all others similarly situated of the rights, privileges, and immunities secured to them by the First and Fourteenth Amendments of the United States Constitution, in violation of 28 U.S.C. § 1983.

## SECOND CLAIM FOR RELIEF

### Violation of the First and Fourteenth Amendments and 28 U.S.C. § 1983 – Freedom of Association

59.     Plaintiffs repeat and reallege as though fully set forth herein the allegations of Paragraphs 1 through 63 of the Complaint.

60.     The new ballot-access laws violate the First and Fourteenth Amendments as applied to the Working Families Party and its members, candidates and supporters, including the other Plaintiffs.

61.     By reason of the foregoing, Defendants, acting under color of state law, have deprived and will continue to deprive Plaintiffs and all others similarly situated of the rights, privileges, and immunities secured to them by the First and Fourteenth Amendments of the United States Constitution, in violation of 28 U.S.C. § 1983.

## THIRD CLAIM FOR RELIEF

### Violation of the Fourteenth Amendment and 28 U.S.C. § 1983 – Due Process and Equal Protection

62.     Plaintiffs repeat and reallege as though fully set forth herein the allegations of Paragraphs 1 through 66 of the Complaint.

63.     Ballot-access laws can affect smaller political parties differently than larger ones. The Constitution recognizes that "[n]ew parties struggling for their place must have the time and

opportunity to organize in order to meet reasonable requirements for ballot position, just as the old parties have had in the past." *Williams v. Rhodes*, 393 U.S. 23, 32 (1968). By requiring a political organization to nominate candidates for both President and Governor, to secure the greater of 2% of the vote or 130,000 votes for each such candidate on that organization's ballot line in order to be a recognized "party" under state law, and to secure that level of support in a Presidential election that will be held in only a few short months, the new ballot-access laws disproportionately impact and prejudice smaller and nascent political parties. The burden on the Working Families Party and all others similarly situated of the Presidential-vote requirement is severe, and utterly unjustified.

64.    The ballot access provisions are invalid in all their applications and therefore that portion of the statute is facially invalid. By reason of the foregoing, Defendants, acting under color of state law, have deprived and will continue to deprive Plaintiffs of the rights, privileges, and immunities secured to them by the Fourteenth Amendment of the United States Constitution, in violation of 28 U.S.C. § 1983.

## FOURTH CLAIM FOR RELIEF

### Violation of the Fourteenth Amendment and 28 U.S.C. § 1983 – Due Process and Equal Protection

65.    Plaintiffs repeat and reallege as though fully set forth herein the allegations of Paragraphs 1 through 69 of the Complaint.

66.    The ballot access provisions are invalid in all their applications and therefore that portion of the statute is facially invalid. By reason of the foregoing, Defendants, acting under color of state law, have deprived and will continue to deprive Plaintiffs of the rights, privileges, and immunities secured to them by the Fourteenth Amendment of the United States Constitution, in violation of 28 U.S.C. § 1983.

## FIFTH CLAIM FOR RELIEF

### Violation of the Constitution of the State of New York

67.     Plaintiffs repeat and reallege as though fully set forth herein the allegations of Paragraphs 1 through 71 of the Complaint.

68.     Plaintiffs seek a judgment of this Court declaring that the Constitution and laws of the State guarantee the right of fusion voting, and that insofar as the FY 2021 budget statute explicitly or effectively interferes with that right they are unconstitutional and null and void.

69.     Plaintiffs seek a judgment of this Court declaring that no Defendant may take any action abridging or interfering with the Plaintiffs' right to fusion voting.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court issue declaratory and injunctive relief against Defendants as follows:

A.  Declaring that the requirement that a political organization nominate a candidate in a Presidential election in order to retain "party" status under New York's Election Law, and imposing that requirement and the new requirement of the greater of 2% or 130,000 votes in the 2020 Presidential election, violates the First and Fourteenth Amendments on its face and as applied to the Working Families Party and its members, candidates, and supporters, including Individual Plaintiffs.

B.  Declaring that the requirement that a political organization nominate a candidate in the 2020 Presidential election, and secure substantial support for that Presidential candidate over only a few short months in order to retain "party" status under New York's Election Law, disproportionately affects and prejudices minority parties and violates the Fourteenth Amendment on its face and as applied to the Working

Families Party and its members, candidates, and supporters, including Individual

Plaintiffs;

C. Declaring that that imposing  the new requirement of the greater of 2% or 130,000

votes in a gubernatorial election in order to retain "party" status under New York's

Election Law, and imposing that requirement in the 2022 election, violates the First

and Fourteenth Amendments on its face and as applied to the Working Families Party

and its members, candidates, and supporters, including Individual Plaintiffs;

D. Declaring that the requirement that a political organization secure the greater of 2%

or 130,00 votes in the 2022  in order to retain "party" status under New York's

Election Law, disproportionately affects and prejudices minority parties and violates

the Fourteenth Amendment on its face and as applied to the Working Families Party

and its members, candidates, and supporters, including Individual Plaintiffs;

E. Preliminarily and permanently enjoining Defendants from declaring that the Working

Families Party does not have "party" status under New York's Election Law if it

chooses not to nominate a candidate in a Presidential election or does not garner the

greater of 2% of the vote or 130,000 votes in that election;

F. Preliminarily and permanently enjoining Defendants from removing the Working

Families Party from the statewide ballots in subsequent elections solely because the

Working Families Party chose not to nominate a candidate in the 2020 Presidential

election or did not garner the greater of 2% of the vote or 130,000 votes in that

election;

G. Awarding Plaintiffs damages in an amount to be determined;

H.  Awarding Plaintiffs their reasonable attorneys' fees and costs incurred in this action

pursuant to 42 U.S.C. sec. 1988; and

F. Awarding such other legal and equitable relief that the Court deems proper.


Dated: New York, New York
       May 29, 2020

MINTZ & GOLD LLP


_____/s/ Kevin W. Goering____
Kevin W. Goering (KG-5859)
Peter Guirguis (PG-2168)
Alex Otchy (AO-5675848)
MINTZ & GOLD LLP
600 Third Avenue, 25th Floor
New York, New York 10016
(212) 696-4848
goering@mintzandgold.com
guirguis@mintzandgold.com
otchy@mintzandgold.com

*Attorneys for Plaintiffs*