**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SAM PARTY OF NEW YORK and MICHAEL J. VOLPE, | Case No. 1:20-cv-00323-JGK |
| Plaintiffs, | (the "SAM Action") |
| v. | |
| PETER S. KOSINSKI, *et al.*, | |
| Defendants. | |
| LINDA HURLEY, *et al.*, | Case No. 1:20-cv-04148-JGK |
| Plaintiffs, | (the "WFP Action") |
| v. | |
| PETER S. KOSINSKI, *et al.*, | |
| Defendants. | |
| LIBERTARIAN PARTY OF NEW YORK, *et al.*, | Case No. 1:20-cv-05820-JGK |
| Plaintiffs, | (the "LPNY Action") |
| v. | |
| NEW YORK STATE BOARD OF ELECTIONS, *et al.*, | |
| Defendants. | |

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

**HARRIS BEACH PLLC**
677 Broadway, Suite 1101
Albany, New York 12207
T: 518.427.9700
F: 518.427.0235

*Attorneys for Defendants*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT .......................................................................................................................... 4

    I.    PLAINTIFFS HAVE NOT RAISED ANY TRIABLE ISSUE OF FACT AS TO THE
        APPLICATION OF THE *ANDERSON–BURDICK* FRAMEWORK ....................................4

        A.    As a matter of law, the 2020 amendments to the New York
              Election Law do not impose any "severe" burden upon
              Plaintiffs..........................................................................................4

        B.    The State's interests are "sufficiently weighty.".............................7

    II.    PLAINTIFFS HAVE NOT MET THEIR BURDEN TO INVOKE RULE 56(d). .................9

        A.    Plaintiffs' proposed discovery is not material to *Anderson–
              Burdick* steps one or two...............................................................10

        B.    Discovery concerning the motives of lawmakers is irrelevant
              and impermissible. .........................................................................13

        C.    The discovery sought is not in Defendants' possession. .............13

        D.    Defendants have already produced the relevant documents in
              their possession, custody, and control; Plaintiffs delayed
              seeking further discovery.................................................................14

    CONCLUSION.................................................................................................................. 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alphonse Hotel Corp. v. Tran*, 828 F.3d 146 (2d Cir. 2016) ........................................ 14

*Am. Party of Tex. v. White*, 415 U.S. 767 (1974)........................................................ 7

*Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321 (2021)................................... 12

*Buckley v. Valeo*, 424 U.S. 1 (1976) ........................................................................... 9

*Bullock v. Carter*, 405 U.S. 134 (1972) ...................................................................... 8

*Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*,
  725 F. Supp. 669 (N.D.N.Y. 1989) ........................................................................ 13

*Carter v. Syracuse City Sch. Dist.*,
  2016 U.S. App. LEXIS 12870 (2d Cir. 2016) ......................................................... 14

*Cecos Int'l, Inc. v. Jorling*, 895 F.2d 66 (2d Cir. 1990) ............................................. 13

*Gualandi v. Adams*, 385 F.3d 236 (2d Cir. 2004)........................................................ 9

*Libertarian Party of Conn. v. Lamont*, 977 F.3d 173 (2d Cir. 2020) ........................... 4

*Libertarian Party of N.Y. v. N.Y. Bd. of Elections*,
  2021 U.S. Dist. LEXIS 91655 (S.D.N.Y. May 13, 2021)...................................... 4, 5

*McCreary Cty. v. Am. Civil Liberties Union of Ky.*,
  545 U.S. 844 (2005)................................................................................................ 13

*Munro v. Socialist Workers Party*, 479 U.S. 189 (1986).......................................... 11, 12

*Paddington Partners v. Bouchard*, 34 F.3d 1132 (2d Cir. 1994) ............................. 9, 10

*Person v. N.Y. State Bd. of Elections*,
  467 F.3d 141 (2d Cir. 2006)................................................................................... 7, 11

*Prestia v. O'Connor*, 178 F.3d 86 (2d Cir. 1999)...................................................... 11

*Price v. N.Y. State Bd. of Elections*, 540 F.3d 101 (2d Cir. 2008)............................. 11

*Raydo v. City of N.Y.*,
  2020 U.S. Dist. LEXIS 89616 (S.D.N.Y. May 20, 2020)......................................... 15

*SAM Party v. Kosinski* , 987 F.3d 267 (2d Cir. 2021) ............................................................ passim

*SAM Party v. Kosinski*, 483 F. Supp. 3d 245 (S.D.N.Y. 2020) ........................................... 4, 6, 11

*Seneca Beverage Corp. v. Healthnow N.Y., Inc.*,
    200 F. App'x 25 (2d Cir. 2006) ................................................................................. 9

*Stryker v. HSBC Sec. (USA)*, 2020 U.S. Dist. LEXIS 158630
    (S.D.N.Y. Aug. 31, 2020) ......................................................................................... 9

*Timmons v. Twin Cities Area New Party*,
    520 U.S. 351 (1997)......................................................................................... 8, 9, 11

*United States v. O'Brien*, 391 U.S. 367 (1968) ............................................................ 13

*Waldron v. Cities Service Co.*, 361 F.2d 671 (2d Cir. 1966) ...................................... 13

**Statutes**

N.Y. Election Law § 3-100 ............................................................................................. 14

**Rules**

Fed. R. Civ. P. 16 ........................................................................................................... 15

Fed. R. Civ. P. 26(f) ....................................................................................................... 15

Fed. R. Civ. P. 56(d) ................................................................................................. passim

Defendants respectfully submit this reply memorandum of law in further support of their motions for summary judgment in the above-captioned actions.[1]

## PRELIMINARY STATEMENT

In these related cases, Plaintiffs take different—and at times contradictory—approaches in challenging New York's 2020 election reforms. For example, WFP speculates, without record evidence and relying on unsubstantiated media reports, that the updates to New York's election laws were part of a guise to punish WFP and eliminate fusion voting in New York. LPNY and GPNY, meanwhile, argue that the law was designed to favor fusion parties like WFP at the expense of non-fusion parties. SAM argues that it should be entitled to retain party status without the need to show any modicum of support from the electorate in races in which it does not wish to participate in specific election cycles. What all of these arguments have in common is that they are irrelevant as a matter of law. This case is solely about whether New York's updated thresholds for party qualification and independent nominating petitions fall within the range of constitutionally permissible ballot-access regulation that states may enact to promote orderly elections.

In their efforts to substantively oppose the summary judgment motion, Plaintiffs do little more than rehash old arguments and discount the rulings in these actions. However, the Second Circuit and this Court have already determined that New York's laws fall within constitutionally permissible bounds. As a matter of law, states have no obligation to tailor their election laws to the chosen strategies of political organizations. Plaintiffs cite no legal authority in support of their contentions that the as-applied constitutionality of New York's election laws turn on whether a particular political group chooses to nominate its own candidate in a given election, or use the fusion voting system to cross-nominate another party's candidate, or even sit that election out.

---

[1] Capitalized terms not defined in this reply brief are defined in Defendants' moving brief ("Br.").

The Second Circuit and this Court looked at a comparison of party-status and ballot-access laws across jurisdictions and evaluated New York's election regime as a whole. Both courts held that the 2020 amendments to the New York Election Law did not result in the virtual exclusion from the ballot. Indeed, four of the seven parties that ran presidential candidates in November 2020, including WFP, exceeded the party-qualification threshold by wide margins and remain parties. The other three former parties—which collectively received only 1.5 % of the vote—failed to show meaningful support from the electorate in the 2020 election, but can still access the ballot for future races through independent nominating petitions, as they have done many times in the past. Moreover, any party that loses party status due to a lack of voter support can attempt to regain party status every two years if they can obtain the greater of 2% of the vote or 130,000 votes (which is less than 1% of the registered voters in New York), with the next opportunity being the 2022 gubernatorial race. Indeed, GPNY has gained and lost party status in New York several times based upon fluctuating voter support. Despite ten straight years of party status leading into the 2020 election, GPNY only secured 0.38 % of the New York vote in the presidential race. The same holds true for SAM, which chose not to run a presidential candidate in 2020, notwithstanding its national party's stated aspiration to run candidates in all 50 states from dog catcher to president.

Based on the undisputed facts and well-settled precedent, New York's 2020 reforms are constitutional as a matter of law. There are no material issues of fact as to the application of the first step of the *Anderson–Burdick* framework. The record evidence and binding precedent conclusively establish that the new thresholds do not impose a severe burden upon the Plaintiffs' constitutional rights. So-called minor parties and independent bodies are not virtually excluded from the ballot. The Second Circuit held that New York's 2% or 130,000 party qualification vote requirement is "middle of the pack" that New York's independent nominating petition

requirements "pale in comparison" to those previously approved by the Supreme Court. Nor is there any triable dispute of fact as to *Anderson–Burdick* step two. New York's party-status and ballot-access thresholds are non-discriminatory and serve important state interests repeatedly recognized by the Supreme Court.

Certain Plaintiffs seek to invoke Rule 56(d), arguing that they need discovery from the State Board of Elections in addition to the substantial discovery already provided. These arguments are premised on the incorrect notion that New York's interests in enacting the legislation—such reducing ballot clutter and voter confusion—must be supported by elaborate, empirical evidence. The Supreme Court has held that states do not need to show evidence of harm or wait for the harm to occur before enacting reasonable election laws. As the Second Circuit recently reaffirmed, the task at *Anderson–Burdick* step two is not to subject the State's proffered interest to judicial fact-finding, but merely to determine whether the stated interests are "sufficiently weighty" to justify the challenged election regulation. Thus, Plaintiffs have not shown that the information they seek would even be relevant to the *Anderson–Burdick* analysis, much less create any issue of fact.

Despite Plaintiffs' assertions that preliminary injunction rulings are not dispositive, based upon the legal holdings of the Second Circuit, summary judgment is warranted as a matter of law without further delay. Simply stated, states are required to enact reasonable laws for an orderly electoral process and New York's party-qualification and ballot-access thresholds fall well within constitutionally permissible bounds. Plaintiffs have not shown that the additional discovery that they seek would have a material impact on either step of the *Anderson–Burdick* constitutional analysis.

## ARGUMENT

I.   **PLAINTIFFS HAVE NOT RAISED ANY TRIABLE ISSUE OF FACT AS TO THE APPLICATION OF THE *ANDERSON–BURDICK* FRAMEWORK.**

Plaintiffs' oppositions failed to raise a triable issue of fact as to either step of the *Anderson–Burdick* framework.

### A.   As a matter of law, the 2020 amendments to the New York Election Law do not impose any "severe" burden upon Plaintiffs.

Plaintiffs acknowledge that in order to trigger strict scrutiny under *Anderson–Burdick* step one, it is their burden to prove that the 2020 amendments have virtually excluded minor parties from the ballot in New York. *See* LPNY Opp. at 20 (citing *Libertarian Party of Conn. v. Lamont*, 977 F.3d 173, 177–78 (2d Cir. 2020)). At the preliminary injunction stage, the Second Circuit and this Court each held that the 2020 amendments to the New York Election Law did not impose any severe burden on minor parties. *See SAM Party v. Kosinski*, 483 F. Supp. 3d 245, 257–61 (S.D.N.Y. 2020) ("*SAM I*"), *aff'd*, 987 F.3d 267, 275–76 (2d Cir. 2021) ("*SAM II*"); *Libertarian Party of N.Y. v. N.Y. Bd. of Elections*, 2021 U.S. Dist. LEXIS 91655 (S.D.N.Y. May 13, 2021) ("*LPNY*").

The broadest challenge is advanced by the LPNY and GPNY Plaintiffs, who argue that the combination of the Party Qualification Method, the Party Qualification Threshold, and the Petition Requirement "virtually exclude" minor parties from the ballot in New York. LPNY Opp. at 20. The Second Circuit and this Court have flatly rejected that argument. Plaintiffs have not offered any reason why the Court should revisit its prior holdings, nor introduced any triable issue of fact as to the application of *Anderson–Burdick* step one. In fact, four of the seven parties that ran presidential candidates far exceeded the required thresholds and remain parties; those groups will continue to have automatic ballot access as long as they demonstrate sufficient support from the electorate. Independent bodies can place candidates on the ballot through independent nominating petitions, with signatures from 45,000 out of over 13 million registered voters (less than one-third

of one percent of the registered voters) for the few statewide offices, and far fewer for local elections. The Second Circuit observed, these amounts "pale in comparison" to those approved by the Supreme Court. *SAM II*, 987 F.3d at 276.

On a virtually identical record, this Court held that the burdens placed on the LPNY and GPNY Plaintiffs "are not severe." *LPNY*, 2021 U.S. Dist. LEXIS 91655 at *19. In reaching that conclusion, this Court considered (i) undisputed historical election data showing that several so-called minor parties, including non-fusion parties, have received greater than 2% of the vote in gubernatorial and presidential elections, including the WFP in 2020; (ii) binding precedent from the Supreme Court and the Second Circuit holding that petitioning requirements far more onerous than those imposed by New York have been upheld as constitutional; and (iii) comparisons to other state laws that impose more onerous petitioning requirements. *See id.* at *21–26.[2] In sum, this Court concluded that Plaintiffs had failed to establish that the new requirements were "beyond the capabilities of a reasonable diligent candidate or party." *Id.* at *26 (quotation omitted). The LPNY and GPNY Plaintiffs do not and cannot argue that more discovery is needed because discovery in their action has closed and they offer no material new evidence that would raise a triable issue of fact as to the severity of New York's requirements.

---

[2] Although not pertinent to the SAM Action, SAM disputes the time period allowed for petitioning for some of the states as indicated in Hallak Decl. Ex. I. Plaintiffs in the LPNY Action do not dispute these figures. *See* Response to Statement of Material Facts (ECF No. 84-1, at ¶ 114). However, even if SAM is correct with regard to its calculation of the petitioning periods, it would only marginally impact the ranking of states by signatures required per day per eligible signer. Using SAM's figures, New York would rank third, behind California and Colorado, as compared to fourth on Exhibit I. *See* Stone Decl., Ex. 13.

LPNY and GPNY lost party status and automatic ballot access for the sole reason that they lack current support from the New York electorate; each received less than 1% of the presidential vote in the 2020 election. SMF ¶ 74. The fact that these parties fared poorly in one election does not mean that a Party Qualification Threshold constitutes a severe burden. It only means that they failed to resonate with New York voters this time and they are free to try again next year. The Second Circuit concluded that the burden imposed by the Party Qualification Threshold was not severe because (i) it fell "in the middle of the pack" as compared to party-qualification thresholds imposed by other states; (ii) "[s]everal federal courts of appeals have approved of thresholds as high or higher"; and (iii) "two minor parties—the Conservative Party and [WFP]—easily cleared the presidential threshold during the most recent cycle." *SAM II*, 987 F.3d at 275–76. Moreover, LPNY and GPNY can still access the ballot through independent nominating petitions, which require signatures of no more than 1% of the off-year electorate—a requirement that the Second Circuit has noted "pale[s] in comparison" to those upheld by the Supreme Court and federal courts of appeal. *Id.* at 276.

SAM also fails to raise a triable issue of fact as to the severity of the alleged burden imposed by the Party Qualification Method. Both this Court and the Second Circuit rejected SAM's argument that the presidential-election requirement imposed a severed burden on SAM's associational activities. *SAM I*, 483 F. Supp. 3d at 257–61; *SAM II*, 987 F.3d at 275–76. These were not tentative conclusions based upon a weighing of a preliminary factual record. SAM's challenge is based on the premise that tying party status to presidential election returns has the effect of forcing minor parties to speak on federal issues. Both this Court and the Second Circuit flatly rejected that premise and concluded that New York is not required to cater to SAM's desire not to run a presidential candidate in a given election cycle. SAM fails to raise any triable issue of fact

and merely recycles its same arguments that have been rejected as a matter of law. *See* SAM Opp. at 12–13 ("SAM was forced to choose between abandoning its core message and competing in a Presidential election inimical to its values and strategy ...."); *SAM II*, 987 F.3d at 275 ("A law that ties party status to a political organization's demonstrated support in a designated race does not 'force' the organization 'to divert its resources in any particular way.'") (quoting *Person v. N.Y. State Bd. of Elections*, 467 F.3d 141, 144 (2d Cir. 2006)).

WFP's own success refutes any argument that it has been virtually excluded from the ballot or that the elections laws are so onerous that they will eliminate minor parties. Instead, by obtaining more than twice the vote needed to remain a party, WFP has proven that with work and a message that resonates with sufficient voters, smaller parties and independent bodies can meet the Party Qualification Threshold.

As WFP remains a party and has automatic berthing on the general-election ballot in all 2021 and 2022 elections, it appears to have mooted its claims by its own performance and lacks standing to continue its claims. While WFP speculates that it might be difficult to maintain that level of success in future election cycles, such speculation does not demonstrate any concrete and particularized harm or that WFP is severely burdened. It only means that WFP will need to continue the "[h]ard work and sacrifice by dedicated volunteers [which is] the lifeblood of any political organization." *Am. Party of Tex. v. White*, 415 U.S. 767, 787 (1974). Indeed, in its pleadings filed prior to the 2020 general election, WFP speculated that the party thresholds would eviscerate all smaller parties (including WFP) following the 2020 election, which prediction has proven to be wildly incorrect.

### B.   The State's interests are "sufficiently weighty."

Plaintiffs' oppositions also fail to raise a triable issue of fact as to *Anderson–Burdick* step two. Under this step, the Court's review is "quite deferential" and "[a] State's important regulatory

interests will usually be enough to justify reasonable, nondiscriminatory restrictions." *SAM II*, 987 F.3d at 276. Even if the Court views the facts in the light most favorable to Plaintiffs and gives them the benefit of all reasonable inferences from those facts, Plaintiffs could not meet their burden of proving at trial that New York's regulatory interests do not justify the Party Qualification Method, the Party Qualification Threshold, and the Petition Threshold.

Plaintiffs' primary argument is that New York may have other avenues available to it to address issues such as ballot overcrowding and voter confusion. *See* SAM Opp. at 16; WFP Opp. at 20–21; LPNY Opp. at 28. However, because the burdens imposed by the 2020 amendments are not severe, New York ballot-access regulations are not subject to a strict scrutiny analysis. *See Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 365 (1997). Rather, New York is entitled to "pursue multiple avenues" towards its legitimate goals. *SAM II*, 987 F.3d at 277. Thus, even if there are alternative methods, New York is in no way prohibited from modernizing its ballot-access thresholds. New York is permitted—and given broad leeway—to do both.

Plaintiffs' arguments also virtually ignore the Second Circuit's opinion in *SAM II*. The Court held that the State's interest in reducing voter confusion and ensuring that parties and candidates enjoy a sufficient modicum of support among the electorate "is more than a matter of uncluttered ballot layout or simplified election administration" and that the State has an interest "[i]n enacting regulations that limit the number of candidates on the ballot" so as to ensure "that the winner is the choice of a majority, or at least a strong plurality, of those voting." *SAM II*, 987 F.3d at 277 (quoting *Bullock v. Carter*, 405 U.S. 134, 145 (1972)). Thus, even though multiple ballot designs are used across the country, the State is in no way restricted from enacting reasonable, nondiscriminatory regulations to limit ballot overcrowding and hopeless candidacies.

8

Plaintiffs also argue that the State's interest in reducing expenditures in the public campaign finance program is not a sufficient justification. But the Second Circuit recognized the State's important interest in not providing public funding to candidates without a significant modicum of electoral support. *Id.* (citing *Buckley v. Valeo*, 424 U.S. 1, 96 (1976)). The Second Circuit also rejected SAM's contention that the tie between public expenditures and increase ballot-access thresholds should be tested through empirical evidence and judicial factfinding. *Id.* (rejecting SAM's reliance on reports by the Brennan Center for Justice and the Campaign Finance Institute and noting that "we do not require 'elaborate, empirical verification' of the State's justifications") (quoting *Timmons*, 520 U.S. at 364). Plaintiffs' recycled arguments have already been deemed irrelevant by the Second Circuit, and, accordingly, fail to present any triable issue of fact.

## II.    PLAINTIFFS HAVE NOT MET THEIR BURDEN TO INVOKE RULE 56(d).

Parties opposing a summary judgment motion on Rule 56(d) grounds are "not automatically entitled to discovery," *Seneca Beverage Corp. v. Healthnow N.Y., Inc.*, 200 F. App'x 25, 27 (2d Cir. 2006), and face a "heavy burden," *Stryker v. HSBC Sec. (USA)*, 2020 U.S. Dist. LEXIS 158630, *56 (S.D.N.Y. Aug. 31, 2020). To invoke Rule 56(d), a party must first establish "(1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful." *Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004) (citations omitted). The discovery sought must be "neither cumulative nor speculative," and "a bare assertion that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d

Cir. 1994) (cleaned up). Here, Plaintiffs[3] fail to meet their heavy burden to justify deferral of Defendants' motion for summary judgment.

### A. Plaintiffs' proposed discovery is not material to *Anderson–Burdick* steps one or two.

Plaintiffs have made no showing that the information they seek would be material to either step of the *Anderson–Burdick* framework. Although Plaintiffs claim to need discovery to assess the burdens imposed by the updated election laws, the discovery sought would not create an issue of material fact. The prior decisions by the Second Circuit and this Court, which were based upon precedent and publicly available election result records, are not impacted by documents or information that Defendants might possess.

Plaintiffs do not explain how the discovery they seek could change these rulings. Instead, Plaintiffs' proposed discovery targets vague topics, including "Defendants' basis for asserting the feasibility of obtaining—and maintaining—status as a party," "the extent to which the [p]residential-election requirement effectively prevents minor parties from enjoying 'party' status unless they cross-nominate a major party candidate for [p]resident," and "the severity of the burden imposed." Stone Decl. ¶ 22; *see also* Guirguis Decl. ¶ 30 ("Discovery is required to show the costs and burdens imposed on the WFP and the other minor parties"). In light of the two prior rulings that the burden imposed on Plaintiffs is not severe, the speculative and conclusory assertion that

---

[3] Plaintiffs in the LPNY Action do not raise a Rule 56(d) argument in their motion because fact discovery has closed in that proceeding. *See* LPNY Action Dkt. 55. Thus, in Point II, "Plaintiffs" refers to the Plaintiffs in the SAM Action and the WFP Action only.

further discovery might create a triable issue is insufficient. *See Paddington Partners*, 34 F.3d at 1138.[4]

Additional discovery would also have no bearing on the assessment of the State's interests at *Anderson-Burdick* step two. As the Second Circuit held, "[r]eview under this balancing test is 'quite deferential' and no 'elaborate, empirical verification' is required." *SAM II*, at 278 (quoting *Price v. N.Y. State Bd. of Elections*, 540 F.3d 101, 109 (2d Cir. 2008)). Moreover, "[a] State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." *Id.* at 276 (quoting *Timmons*, 520 U.S. at 538 (cleaned up)). As such, Defendants are "[not] required to . . . make a particularized showing of the existence of voter confusion, ballot overcrowding, or the presence of frivolous candidacies prior to the imposition of reasonable restrictions on ballot access." *Munro v. Socialist Workers Party*, 479 U.S. 189, 195 (1986). Plaintiffs acknowledge that this standard applies, yet still insist that additional discovery on this point is somehow necessary. *See* SAM Opp. at 14; WFP Opp. at 17. It is not.

In *SAM I*, this Court concluded that the State's interests—avoiding ballot overcrowding, reducing voter confusion, and preventing frivolous candidacies—were "sufficiently weighty" to justify the reasonable, nondiscriminatory Party Qualification Method and Party Qualification Threshold. 483 F. Supp. 3d at 261. Likewise, in *SAM II*, the Second Circuit held that Defendants had "set forth a coherent account of why the presidential-election requirement [i.e., the Party Qualification Method] will help to guard against disorder and waste," concluding that those

---

4 SAM's statement that the Party Qualification Method "threatens SAM's ability to exist" (SAM Opp. at 13) is not true. If anything, the Party Qualification Method merely affects SAM's ability to qualify as a statutory party. It is well-established that political organizations have no constitutional right to automatic ballot access. *Person*, 467 F.3d at 144 (citing *Prestia v. O'Connor*, 178 F.3d 86, 88–89 (2d Cir. 1999)).

interests, together with the important interest of not funding hopeless candidacies through the State's newly-established public campaign financing program, were "enough to justify the burden the requirement imposes on the SAM Party's members." 987 F.3d at 278.

The result should be no different at the summary judgment stage since Plaintiffs do not challenge the "weightiness" of the State's interests, but rather seek to show that the election law reforms were not necessary or the product of improper motives. Plaintiffs seek complaints of ballot overcrowding and voter confusion and efforts made to address them, possible alternative ballot designs, analysis regarding voter confusion, possible alternative means to address voter confusion, and similar evidence regarding the existence of and burdens imposed by "frivolous candidacies." *See* Stone Decl. ¶¶ 27, 32, 37; Guirguis Decl. ¶ 35. These requests and the existence of any responsive documents are irrelevant because States are "permitted to respond to potential deficiencies in the electoral process with foresight rather than reactively." *Munro*, 479 U.S. at 195; *see also Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2348 (2021) (rejecting the argument that justifications for a state's vote-by-mail restrictions were "tenuous" because it did not need to present evidence of fraud). In fact, Defendants have provided some evidence, largely from the public record, to show that these concerns have actually manifested. That does not open the floodgates for unnecessary discovery.

With respect to the State's interest in controlling the public fisc in connection with the public campaign finance program, the Court in *SAM II* held that "even if the State has installed other measures aimed at preventing nonviable candidacies from receiving public funds, it may pursue multiple avenues towards that goal." 987 F.3d at 277. Therefore, Plaintiffs' proposed discovery to assess whether the election law changes are "necessary" to further the State's interest or whether "alternative means" exist is also irrelevant.

**B.      Discovery concerning the motives of lawmakers is irrelevant and impermissible.**

WFP expressly seeks to discover evidence regarding the motivations of lawmakers and Commission members. *See* Guirguis Decl. ¶¶ 35, 41. Although SAM is less explicit, it too seeks to establish in discovery that the interests asserted by the Defendants are "not legitimate." *See* Stone Decl. ¶¶ 34, 39. However, it is well-established that inquiries into the motives or mindset of the individual lawmakers who enacted the 2020 reforms (or members of the Commission who recommended the changes) are irrelevant and improper and have no bearing on the Court's decision when assessing a facially-neutral law. *See McCreary Cty. v. Am. Civil Liberties Union of Ky.*, 545 U.S. 844, 862 (2005); *United States v. O'Brien*, 391 U.S. 367, 383-84 (1968); *Cecos Int'l, Inc. v. Jorling*, 895 F.2d 66, 73 (2d Cir. 1990) (quoting *O'Brien*, 391 U.S. 367, 383-84 (1968). As the Second Circuit explained:

> Even were we to hazard a guess at the 'true' motives of lawmakers who vote on a bill, the Supreme Court admonishes us that 'inquiries into lawmakers' motives or purposes are a hazardous matter. . . . What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it,' and guesswork in this area is valueless conjecture.

*Cecos*, 895 F.2d at 73 (quoting *O'Brien*, 391 U.S. at 383-84 (alterations omitted)).

**C.      The discovery sought is not in Defendants' possession.**

Plaintiffs have also not established that any of the discovery they seek is actually in the possession, custody, or control of the Defendants. Rule 56(d) is "specifically designed to enable a plaintiff to fill material evidentiary gaps in its case in an effort to withstand summary judgment…, [but] it does not permit a plaintiff to engage in a 'fishing expedition.'" *Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 725 F. Supp. 669, 680 (N.D.N.Y. 1989) (citing *Waldron v. Cities Service Co.*, 361 F.2d 671, 673 (2d Cir. 1966)). "A district court . . . plainly has discretion to reject a request for discovery . . . if the request is based only on speculation as to what potentially

could be discovered, and a bare assertion that the evidence supporting plaintiff's allegations is in the hands of the moving party is insufficient to justify the denial of summary judgment." *Carter v. Syracuse City Sch. Dist.*, 2016 U.S. App. LEXIS 12870, at *11-12 (2d Cir. 2016) (quotations omitted).

Defendants in this case played no role in enacting the election laws at issue, and instead are the commissioners and officers of the New York State Board of Elections ("BOE"), the State agency charged with administering and enforcing the State's election laws. *See* N.Y. Election Law § 3-100. Plaintiffs have articulated no basis for their implicit suggestion that the BOE possesses documents relevant to either the legislative interests supporting the 2020 amendments or the legislative process that led to their enactment. *See Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 151 (2d Cir. 2016) (Rule 56(d) argument was properly rejected where the plaintiff "failed to explain his basis for believing that these documents exist"). Plaintiffs may not invoke Rule 56(d) based upon mere speculation.

### D.   Defendants have already produced the relevant documents in their possession, custody, and control; Plaintiffs delayed seeking further discovery.

SAM's claim that "[t]here has been no merits discovery in this action" (Stone Decl. ¶ 16) is not true. SAM served document demands on Defendants more than a year ago. Although SAM diminishes the discovery demands as pertaining only to its preliminary injunction motion, they were expansive. *See* Hallak Reply Decl. Ex. O. SAM sought "all documents and things" relating to the 2020 amendments, the Party Qualification Method, the Party Qualification Threshold, and the public campaign finance program." *See id.* (Requests Nos. 1–4). In response to these discovery demands, Defendants conducted a diligent search and produced 1,334 pages of documents, including records specifically pertaining to SAM and internal and external email communications. *See* Brehm Reply Decl. ¶ 6; Hallak Reply Decl. ¶ 7. These records were contemporaneously

provided to WFP as well, which elected not to serve its own discovery demands. Hallak Reply Decl. ¶ 9. Defendants do not believe any additional responsive documents exist in their possession. *See* Brehm Reply Decl. ¶ 7.

Additionally, had Plaintiffs actually wanted additional discovery, there was nothing impeding them from seeking it prior to the March 10, 2021 summary judgment pre-motion conference. Although Rule 16 and 26(f) conferences were never held, they were also not pursued by Plaintiffs with this Court. SAM waited idly for the Second Circuit to rule on its appeal of this Court's denial of its preliminary injunction motion. WFP did not take any action presumably because it easily satisfied the Party Qualification Threshold in the 2020 general election. These actions were never stayed. In the meantime, Defendants completed discovery in the related LPNY Action. Plaintiffs' lack of urgency in conducting discovery provides another basis for rejecting their Rule 56(d) argument. *See Raydo v. City of N.Y.*, 2020 U.S. Dist. LEXIS 89616, *20 (S.D.N.Y. May 20, 2020) (rejecting Rule 56(d) argument where the proponent had not "shown that they were diligent in the pursuit of the information they now seek, or shown why any diligent efforts were unsuccessful").

## CONCLUSION

Defendants respectfully request that the Court enter summary judgment in Defendants' favor as to each of these actions, and grant such other and further relief as the Court deems just and proper.

Dated: September 24, 2021                     Respectfully submitted,

                                              **HARRIS BEACH PLLC**

                                              */s/ Elliot A. Hallak*
                                              Elliot A. Hallak
                                              Daniel R. LeCours
                                              677 Broadway, Suite 1101
                                              Albany, New York 12207
                                              T: 518.427.9700
                                              F: 518.427.0235
                                              ehallak@harrisbeach.com
                                              dlecours@harrisbeach.com

                                              Thomas J. Garry
                                              333 Earle Ovington Boulevard, Suite 901
                                              Uniondale, New York 11553
                                              T: 516.880.8484
                                              F: 516.880.8483
                                              tgarry@harrisbeach.com

                                              Kyle D. Gooch
                                              99 Garnsey Road
                                              Pittsford, New York 14534
                                              T: 585.419.8800
                                              F: 585.419.8801
                                              kgooch@harrisbeach.com

                                              *Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to part II.D of this Court's individual practices, I certify that this memorandum of law (i) contains 4,801 words, excluding the cover page, tables, and signature block, as reported by the word-count feature of Microsoft Word; and (ii) complies with the Court's formatting rules.

Dated: September 24, 2021

*/s/ Elliot A. Hallak*
Elliot A. Hallak